Opinion filed April 22,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-08-00245-CR

                                                    __________

 

                                   VICTOR
MENDOZA, Appellant

                                                             V.

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 238th District Court

                                                          Midland
County, Texas

                                                   Trial
Court Cause No. CR33457

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The jury convicted
Victor Mendoza of two counts of aggravated sexual assault of a child and two
counts of indecency with a child and assessed his punishment at twenty years
confinement on each aggravated sexual assault count, ten years confinement for
one indecency count, and five years confinement for the other.  The trial court
ordered that both twenty-year sentences and the five-year sentence run
concurrently and that the ten-year sentence would begin upon completion of those
sentences.  We affirm.

I.  Background
Facts

In
late 2006, Mendoza lived in Midland with his daughter, granddaughter-in-law,
and two great-granddaughters, J.M. and D.M.  During this time, another
great-granddaughter, M.M., frequently visited the residence.  J.M.’s school
contacted her mother and the Midland Police Department concerned about possible
child abuse.  D.M. and M.M. sat for forensic interviews at Midland Children’s
Advocacy Center.  D.M. disclosed that her “grandfather” kissed her “in the
mouth” and licked and bit her “private.”  D.M. also described how her
grandfather exposed himself to her.  M.M. disclosed in her interview that
Mendoza stuck his tongue into her genitals.

Mendoza
was indicted by the grand jury on four separate counts.  The first two alleged
that Mendoza penetrated M.M.’s sexual organ and mouth.  Counts Three and Four
alleged that he touched D.M.’s genitals and exposed his genitals to her.

II.  Issues Presented

Mendoza
presents two issues on appeal.  He challenges the legal and factual sufficiency
of the evidence that he touched a part of D.M.’s genitals and of the evidence
identifying him as the individual responsible for the acts described in Counts Three
and Four.

III.  Legal & Factual Sufficiency

To determine if the evidence is legally sufficient, we must review all of the evidence
in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Jackson
v. State, 17 S.W.3d 664 (Tex. Crim. App. 2000).  To determine if the
evidence is factually sufficient, we must review all the evidence in a neutral
light and determine whether the evidence supporting the verdict is so weak that
the verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence.  Watson
v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

A.    
 Was There
Sufficient Evidence that Mendoza Touched the Genitals of a Child?

Andra
Kay Chamberlin, an employee with the Children’s Advocacy Center and the
designated outcry witness, testified that she interviewed D.M.  At the time,
D.M. was six years old.  D.M. told her that Mendoza kissed her in the mouth and
licked and bit her private and that it hurt when he bit her.  During the
interview, D.M. circled the genital area on a female drawing to demonstrate
where her private was.  She also told Chamberlin that she saw Mendoza’s “wee
wee,” described it as black and hairy, and said that Mendoza told her to lick
it.  D.M. also testified at trial.  She was given a drawing of a girl with no
clothes and was asked to draw a circle where Mendoza touched her.  She drew a
circle around the figure’s genital area.

The
State was required to prove beyond a reasonable doubt that Mendoza committed
indecency with D.M. by engaging her in sexual contact.  Tex. Penal
Code Ann. § 21.11 (Vernon Supp.
2009).  Sexual contact is defined as touching the anus, breast, or any part of
the genitals of another person with the intent to arouse or gratify the sexual
desire of any person.  Tex. Penal Code
Ann. § 21.01 (Vernon Supp. 2009).  Mendoza complains that D.M.’s
circling of the genital area on an anatomical drawing does not support the
finding that he touched any part of her genitals because this would allow a
conviction for touching D.M.’s thigh or abdomen.  Mendoza relies primarily upon
Nelson v. State, 505 S.W.2d 551, 552 (Tex. Crim. App. 1974) (reversing
fondling conviction because the term “chest” is patently broader than “breast”)
to argue that D.M.’s drawing was insufficient.

When
the victim is a child, their use of unsophisticated language must be
considered.  See Clark v. State, 558 S.W.2d 887, 889 (Tex. Crim.
App. 1977) (explaining the inherent difficulties regarding the testimony of
child sexual abuse victims because the child often lacks the technical
knowledge to accurately describe her body). Texas courts have repeatedly upheld
convictions where the child victim used imprecise terms.  See id. (holding
evidence sufficient to show sexual contact where complainant testified
appellant touched her “front butt”); Thomas v. State, 399 S.W.2d 555,
556 (Tex. Crim. App. 1966) (“privates” sufficient); Scott v. State, 202
S.W.3d 405, 410 (Tex. App.—Texarkana 2006, pet. ref’d) (“private areas”
sufficient); Bryant v. State, 685 S.W.2d 472, 475 (Tex. App.—Fort Wort
1985, pet. ref’d) (“between [the] legs” sufficient).

Applying
this principle to D.M.’s drawing, the jury was entitled to give consideration
to her age when determining whether Mendoza engaged in sexual contact.  We note
that D.M. drew a relatively small circle around the figure’s vagina.  We note
also that D.M. referred to the genital area as the place “where you peed” and
that she told Chamberlin that Mendoza “had licked her private and that he had
bitten her private and it hurt.”  The evidence was legally and factually
sufficient to support the jury’s conclusion that Mendoza engaged in sexual
contact with D.M. as charged in Count Three.  Mendoza’s first issue is
overruled.  

B.      Was the State’s Identification
Evidence Sufficient?

Mendoza
also argues that there is insufficient evidence identifying him as the person
charged by the State in Counts Three and Four of the indictment.  Identification
of the defendant as the person who committed the offense charged is part of the
State’s burden of proof beyond a reasonable doubt.  Miller v. State, 667
S.W.2d 773, 775 (Tex. Crim. App. 1984).  When a defendant contests the identity
element of the offense, we are mindful that identity may be proven by direct
evidence, circumstantial evidence, or even inferences.  Roberson v. State,
16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref’d).  Although the preferred
procedure is for the prosecutor to request notation in the record of an
in-court identification, it is not required to sustain a jury’s guilty
verdict.  Rohlfing v. State, 612 S.W.2d 598, 601 (Tex. Crim. App.
1981).  Instead, we look to see if the totality of the circumstances indicates
that the jury was adequately apprised that the witnesses were referring to the
appellant.  Id.

Mendoza
claims he was not properly identified in court because the record does not
document an in-court identification and because his great-granddaughter, D.M.,
identified the perpetrator as “Grandpa.”  The State asked D.M. if the person
who touched her inappropriately was in the courtroom.  She responded yes and
then the following transpired:

Q. 
Okay.  Are they in here?  Now, are you a little nervous to talk about that person? 
Does that make you kind of scared?

 

A. 
Uh-huh.

 

Q. 
Well, what I need to do, D.M., is just so we can maybe find out who you’re
talking about, I’m just going to walk over to another part of the room, and I
want you [to] tell us if I’m walking in the direction where that person is,
okay?  If I walk over here, is that where that person is?

 

                        A. 
No.

 

                        Q. 
How about if I walk over this way, is that where that person is?

 

                        A. 
I don’t know.

 

                        Q. 
You don’t know?  If I walk all the way over here, is that where that person
is?  Can you see where I am?

 

                        A. 
Yes.

 

                        Q. 
Okay.  Is that where that person is?

 

                        A. 
(Nods Head Affirmatively)

 

                        Q. 
Okay.  Is it the person that I’m standing right here by?  And you’re shaking
your head up and down, D.M.  Is that a yes?

 

                        A. 
Yes.

 

Mendoza
complains that this vague reference to an unknown person is insufficient.  The
State acknowledges that it did not seek a notation of identification in the
record but asks that we consider D.M.’s testimony in conjunction with the other
identification evidence.

Several
important facts make clear that, when D.M. identified the perpetrator as her “Grandpa,”
she was referring to Mendoza and not a biological grandfather.  First, it was
established that, during the alleged time of the offense, Mendoza and D.M.
lived in the same house and that Mendoza was often the only adult in the house
with D.M. and M.M.  Significantly, M.M. also identified Mendoza as “Grandpa”
and not as her great-grandfather.  M.M. also pointed to her Grandpa, and the
prosecutor used the talismanic phrase to have the identification recorded.

Additionally,
D.M. disclosed during her forensic interview that she had been abused by
“Victor Mendoza.”  When questioned by the prosecutor, the mothers of the
victims affirmatively answered that they knew Victor Mendoza and that he was in
the courtroom and proceeded to identify him as the man wearing a black vest.

Finally,
considering the totality of the circumstances, there is no substantial likelihood
of misidentification.  See Cooks v. State, 844 S.W.2d 697, 731 (Tex.
Crim. App. 1992) (identification testimony is considered reliable when the
totality of the circumstances shows no likelihood of misidentification).  There
was no controverting identification evidence or suggestion that anyone else was
responsible for the charged acts; but, instead, the evidence consistently
referred to Mendoza as the perpetrator.  Cf. Wiggins v. State, 255
S.W.3d 766, 772 (Tex. App.—Texarkana 2008, no pet.) (affirming conviction
despite the lack of a positive identification where both counsel repeatedly
referred to the defendant as the accused and there was no controverting
evidence).

The
evidence is legally and factually sufficient to identify Mendoza as the charged
indi-vidual and to sustain the jury’s verdict.  We are convinced that the jury
was adequately apprised that the witnesses were referring to Mendoza, and we
overrule his second issue.

IV.  Conclusion

The judgment of
the trial court is affirmed.

 

 

April 22, 2010                                                                                    
RICK STRANGE

Do not publish.  See Tex. R. App. P. 47.2(b).                                  JUSTICE

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.