**Opinion filed August 8, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00232-CR
_____

## DAVID MARTIN LUNA, Appellant
## V.
## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR48310**

---

### M E M O R A N D U M   O P I N I O N

David Martin Luna was indicted for two counts of aggravated sexual assault of a child and one count of indecency with a child by exposure. At the close of the State's evidence, the State waived Count Three of the indictment that alleged indecency with a child by exposure. *See* TEX. PENAL CODE ANN. § 21.11(a)(2)(A) (West 2019). The jury was unable to agree on a special issue regarding venue for the offense of aggravated sexual assault of a child that was alleged in Count One— that Appellant "intentionally and knowingly cause[d] the contact and penetration of the mouth of [A.R.] by the sexual organ of [Appellant]." *See id.* § 22.021(a)(1)(B)(ii), (v). However, the jury found Appellant guilty of Count Two

of the indictment that alleged that Appellant "intentionally and knowingly cause[d] the sexual organ of [A.R.] to contact and penetrate the mouth of [Appellant]." *See id.* § 22.021(a)(1)(B)(iii). The trial court assessed Appellant's punishment at confinement for a term of fifty years in the Institutional Division of the Texas Department of Criminal Justice. In one issue, Appellant challenges the sufficiency of the evidence supporting his conviction. We affirm.

*Background Facts*

A.R., the eleven-year-old victim, lived in Midland with her mother, brother, grandparents, and Appellant. Appellant was the boyfriend of A.R.'s mother, R.S. Appellant had lived with R.S. for several years.

A.R. testified that, on the morning of August 15, 2016, she was sleeping on the couch when Appellant woke her up. Appellant told A.R. that they were going to meet R.S. and A.R.'s brother in Big Spring to ride dirt bikes and swim in a lake. Before they left Midland, A.R. walked with Appellant to Appellant's father's house because Appellant wanted to borrow his father's truck. Once there, Appellant and A.R. went into a shed whereupon Appellant told A.R. that he was going to put some furniture on the truck to take with them to Big Spring.

A.R. testified that, while inside the shed, Appellant told her to lie on her stomach across his lap as he sat in a chair. Appellant proceeded to place his hands under A.R.'s clothes and touch her "tush" or "behind" on the cheeks and "in the front, in [her] private part." A.R. testified that Appellant subsequently put her in the chair that he had been sitting in at which time he pulled down her shorts and bathing suit bottoms. A.R. testified that Appellant then spread A.R.'s legs apart similar to a woman giving birth. A.R. testified that Appellant began "kissing and licking [her] below part," which she also described as her "private part." Appellant stopped when he heard his father come out of the house. Appellant told A.R. to get into the truck, and they drove to a lake near Big Spring in Howard County.

2

At the lake, Appellant told A.R. to get in the water even though A.R. did not want to go swimming. Once in the water, Appellant pulled A.R. to a deep area and removed her bathing suit bottoms. A.R. was able to swim out of the deep area, get out of the lake, and run back to the truck. A.R testified that she tried to cover her "tushy" and "private part" with her hands.

In the truck, Appellant took his genitals out of his pants and began touching himself and shaking his genitals at A.R. Appellant then put his genitals back in his pants, A.R. put her bathing suit and shorts back on, and they drove to the top of a hill. Appellant told A.R. that, if she "let him finish, [then they] would go back home." A.R. testified that Appellant pulled down her shorts and bathing suit bottoms and put a pillow over her face. They were positioned so that Appellant's face was in A.R.'s midsection and Appellant was somewhat on top of her. Appellant began "kissing and licking" A.R.'s "private part."

A.R. testified that Appellant told her that "he stuck his finger into [her] private part, but [she] didn't believe that." A.R. explained that she felt that he had "put his genitals into [her] private part" because "[i]t felt like a golf ball." A.R. told Appellant that it was hurting, and he finally stopped. A.R. then got away from him and put her clothes back on.

A.R. testified that Appellant drove a little further, but stopped somewhere between Big Spring and A.R.'s home in Midland. Appellant again pulled out his genitals and told A.R. to place her head in his lap. A.R. cried and tried to resist. Appellant drove a little longer and stopped again, forcing A.R. to lie down with him. Appellant "pulled out his genitals and told [A.R.] to put [her] lips over [her] teeth and open [her] mouth." A.R. testified that Appellant grabbed her head, forced her to suck on his private part, and told her to "make [him] come." Finally, A.R. was able to get out of the truck and tried "to spit out what had come into [her] mouth."

When Appellant and A.R. finally returned home, A.R. jumped out of the car and ran to R.S. and a police officer. R.S. had called the police because she was concerned after not hearing from Appellant or A.R. all day. R.S. testified that A.R. was scared and crying. A.R. told R.S. and the officer that Appellant made her put her mouth on his penis. Appellant was subsequently arrested and charged with two counts of aggravated sexual assault and one count of indecency with a child.

*Analysis*

In a single issue, Appellant asserts that the evidence is insufficient to prove that he engaged in sexual contact with A.R. as alleged in Count Two of the indictment. Appellant's sole contention is that A.R.'s statements describing how Appellant licked and kissed her "below part" and "private part" are insufficient to prove beyond a reasonable doubt that Appellant contacted A.R.'s sexual organ with his mouth in Midland County.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence,

and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly "causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor." PENAL § 22.021(a)(1)(B)(iii). The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2018).

Appellant directs our attention to the evidence of the events alleged to have occurred in the shed at Appellant's father's house. Appellant contends that A.R.'s statements about Appellant kissing and licking her "private part" and her "below part" failed to establish beyond a reasonable doubt that Appellant contacted A.R.'s sexual organ—as opposed to "some other 'private' portion of her body." Appellant contends that the evidence was deficient because the State failed to elicit additional clarification from A.R. about what she was referring to when she used the terms "private part" and "below part." Appellant also suggests that A.R. should have been able to use more precise terms because of her age and the fact that she referred to Appellant's male sexual organ as his genitals. We disagree.

The Court of Criminal Appeals has held that "we cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults." *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). "A minor complainant need not testify in the terms of the statutory language, but may use unsophisticated language to describe the sexual assault, in a manner sufficient to sustain the conviction." *Zuniga v. State*, 811 S.W.2d 177, 179–

80 (Tex. App.—San Antonio 1991, no pet.) (citing *Clark v. State*, 558 S.W.2d 887 (Tex. Crim. App. 1977)).

Immediately prior to testifying that Appellant kissed and licked her "private part" in the shed on Appellant's father's property in Midland, A.R. described Appellant's act of telling her to lie on her stomach across his lap. A.R. testified that Appellant touched her "in the front, in [her] private part." Thus, A.R. had previously provided the jury with the area on her body that she was referring to when she used the term "private part." The fact that an eleven-year-old child would refer to her own female sexual organ with a euphemism is understandable. Additionally, A.R. testified that Appellant put her in a posture in the chair that she equated with a woman giving birth. This was additional evidence upon which the jury could conclude that A.R. was referencing her female sexual organ when using the term "private part." Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found that Appellant committed aggravated sexual assault as alleged in Count Two of the indictment. We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


August 8, 2019                                                    JOHN M. BAILEY

Do not publish. *See* TEX. R. APP. P. 47.2(b).          CHIEF JUSTICE

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.